IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH ZAMBITO

    v.                     :   Civil Action No. DKC 23-1875

OCULAR BENEFITS, LLC, et al.

**MEMORANDUM OPINION**

This action for breach of contract, fraud, and violation of the Maryland Wage Payment and Collection Act ("MWPC") for unpaid commissions was removed by one of the defendants from state court. Presently pending and ready for resolution is the motion to remand filed by Plaintiff Joseph Zambito. (ECF No. 8). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to remand will be granted. All other motions will remain for resolution in state court.[1]

## I.   Background

On May 4, 2023, Plaintiff commenced this action by filing a complaint in the Circuit Court for Montgomery County (the "Original

---

[1] The pending motions remaining for resolution in state court are: a motion to dismiss filed by Defendant Ralph Foxman ("Mr. Foxman"), (ECF No. 4); a motion to dismiss filed by Defendants Premier Eye Care of Florida, LLC ("Premier") and Lorna Taylor ("Ms. Taylor"), (ECF No. 9); and a motion to dismiss filed by Defendant Ocular Benefits, LLC, (ECF No. 25).

Complaint"). (ECF No. 1-9). On June 12, 2023, Plaintiff filed an amended complaint (the "Amended Complaint"), contending that he is owed unpaid commissions by Premier Eye Care of Florida, LLC and Ocular Benefits, LLC, formerly known as Visicaid, LLC ("Visicaid") until August 15, 2012. (ECF No. 2 ¶ 2). Pursuant to his June 28, 2011 severance agreement with Visicaid ("Version 5"), Plaintiff contends that Visicaid was obligated to pay Plaintiff commissions in perpetuity equal to 0.5% of the gross revenue from "any contract for the WellCare Health Plan *or* Medicaid routine vision product for the 2011 calendar year or after ('WellCare Business')" obtained by any "Protected Party," such as Visicaid and Premier. (*Id.* ¶¶ 2-3, 11) (emphasis added). On June 30, 2013, Premier assumed Visicaid's obligations to pay commissions to Plaintiff. (ECF No. 2 ¶ 3). Plaintiff alleges that Ralph Foxman, Ocular Benefits, LLC's member and officer, and Lorna Taylor, Premier's President and Chief Executive Officer, individually and as agents for Ocular Benefits, LLC and Premier respectively, knowingly and deliberately misled Plaintiff by excluding revenue from applicable contracts in their calculations of Plaintiff's commissions, in addition to omitting any mention of these contracts in their communications with Plaintiff. (*Id.* ¶ 26). In Count I, Plaintiff alleges breach of contract against Ocular Benefits, LLC and Premier. (*Id.* ¶¶ 27-29). In Count II, Plaintiff alleges fraud against all Defendants. (*Id.* ¶¶ 30-34). In Count III, Plaintiff alleges that Ocular

Benefits, LLC and Premier violated the MWPC, Md. Code Ann., Lab. & Empl. § 3-505(a).  (*Id.* ¶¶ 35-37).

On May 26, 2023, Plaintiff served Mr. Foxman with the Original Complaint via certified mail.  (ECF No. 8 ¶ 2).  Counsel entered an appearance on his behalf on June 13, 2023.  (ECF No. 1-25).  On June 27, 2023, Mr. Foxman answered the Amended Complaint and filed a motion to dismiss but did not contest service of process.  (ECF Nos. 3; 4).  On July 12, 2023, Premier removed the case to this court on the basis of diversity of citizenship: Plaintiff is a California citizen; Mr. Foxman is a Maryland citizen; Ms. Taylor is a Florida citizen; Ocular Benefits, LLC is a Maryland limited liability company whose single member is a resident of Wisconsin; and Premier is a Florida limited liability company whose members are not residents of California.  (ECF No. 1 ¶¶ 10-11).  The Notice of Removal recited that Ms. Taylor and Mr. Foxman consented to removal.  (ECF No. 1 ¶ 13).  Ocular Benefits, LLC was not served until October 20, 2023, (ECF No. 24), after the court granted an extension of time for service of process on Ocular Benefits, LLC, (ECF No. 20).

On July 19, 2023, Plaintiff filed a motion to remand and requested an award of fees and costs.  (ECF No. 8).  Premier filed its opposition on August 2, 2023, and Plaintiff replied on September 13, 2023.  (ECF No. 15).

## II.  Standard of Review

Title 28 U.S.C. § 1441 allows defendants to remove a civil action "brought in a State court of which the district courts of the United States have original jurisdiction."  "The propriety of removal is determined as of the time of removal[.]"  *In re Microsoft Corp. Antitrust Litig.*, 332 F.Supp.2d 890, 892 (D.Md. 2004) (citing *Nolan v. Boeing Co.*, 919 F.2d 1058, 1064 n.5 (5th Cir. 1990)).  Pursuant to 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."  A plaintiff that disputes the propriety of removal may move to remand.

In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."  *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md. 1997) (citations omitted).  This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court."  *Id.* at 701.  When opposing a motion to remand, the party asserting subject matter jurisdiction "bears the burden of proof, by a preponderance of the evidence, to show the parties' citizenship to be diverse."  *Zoroastrian Ctr. and Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016) (citing

4

*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.")).

Diversity-based removal jurisdiction is limited by the forum defendant rule, which provides: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly *joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Proper service is determined under state law and proper joinder is analyzed under the same fraudulent joinder framework used in other areas of jurisdiction.

"Fraudulent joinder is a doctrine that provides an exception to the complete diversity requirement and forum defendant rule[,]" and "allows the federal court to disregard nondiverse parties in the state court action at the time of removal." *Hill v. Abdumuxtorov*, No. 1:22-cv-00004-JPJ, 2022 WL 1690265, at *2 (W.D.Va. May 26, 2022) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)); *see also Boggs v. 3M Co.*, No. 2:20-cv-00121-ICB, 2020 WL 762859, at *3 n.4 (S.D.W.Va. Feb. 14, 2020) (citing *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F.Supp.3d 544, 553 (S.D.W.Va. 2015)) (stating that removal is impermissible "where fraudulent joinder is alleged as to a forum state Defendant"). A party is fraudulently joined when (1) there is no

possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).   Here, Premier does not contend that there has been outright fraud in Plaintiff's allegations, but that there is no possibility that Plaintiff could establish a cause of action against Mr. Foxman. (ECF No. 11, at 12).   "The burden on the defendant claiming fraudulent joinder is heavy:   the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall*, 6 F.3d at 232-33 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).   "Once the court identifies [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).   This burden is even greater on the defendant than that of a motion to dismiss under Fed.R.Civ.P. 12(b)(6).   *See id.* at 424.   In determining whether joinder is fraudulent, the court is "not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling and Testing Ctrs. v. Group W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

6

## III. Analysis

### A. Remand

Although Mr. Foxman is a Maryland resident who consented to removal, Premier contends that (1) Mr. Foxman has not been properly served; (2) Mr. Foxman has been fraudulently joined; and (3) Plaintiff has engaged in purposeful gamesmanship. (ECF No. 11, at 11, 19, 22). Thus, Premier asserts that the forum defendant rule does not apply. (*Id.*). Premier is incorrect. Mr. Foxman was fully engaged in this litigation in state court prior to removal by filing both an answer and a motion to dismiss, and waived any right he might have to challenge service of process on him. Moreover, Premier has not shown that Plaintiff fraudulently joined Mr. Foxman or engaged in any gamesmanship.

#### 1. Proper Service and Gamesmanship

State law determines whether service while the case was before a state court was proper. Md. Rule 2-121(a)(3) requires service by mail to be conducted via certified mail with restricted delivery. As Plaintiff admits, service on Mr. Foxman did not conform to Md. Rule 2-121(a)(3) because the "Green Card" he used to mail the Summons and original Complaint only reflects certified delivery and receipt by Debra Murray rather than Mr. Foxman. (ECF No. 15, at 2). Nevertheless, if a forum defendant waives formal service in state court, the forum defendant has been "properly served" because the forum defendant has submitted to the state

court's jurisdiction. *See Trademark Remodeling, Inc. v. Rhines*, 853 F.Supp.2d 532, 537 (D.Md. 2012) (citing *Samuels v. Two Farms, Inc.*, No. 10-cv-2480-DKC, 2010 WL 4103670, at *2 (D.Md. Oct. 18, 2010)) ("Where a defendant waives the insufficiency of service of process defense, 'his first appearance or filing is the first moment where he submits to the jurisdiction of the court.'"). Under Maryland law, the insufficiency of service defense is waived if not made in a motion to dismiss filed before the answer. *See* Md. Rule 2-322.

Here, Mr. Foxman did not raise an insufficiency of service defense before filing his answer to the Amended Complaint on June 27, 2023. (ECF No. 3). Hence, he has waived formal service and was, in effect, "properly served" for the purposes of the forum defendant rule.[2] Moreover, Premier recited that Mr. Foxman consented to removal on July 12, 2023. (ECF No. 11, at 10). Premier cannot simultaneously maintain that Mr. Foxman consented

---

[2] Plaintiff urges the court to adopt the functional reading of the forum defendant rule as applied in *Billie v. Valance*, No. 21-cv-0477-RDB, 2021 WL 3725348 (D.Md. 2021), *Caillouet v. Annapolis Yacht Company, LLC*, No. 16-cv-1698-ELH, 2016 WL 8737484 (D.Md. 2016), and *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F.Supp.3d 719 (D.Md. 2017). (*See* ECF Nos. 8 ¶ 8; 15, at 2-5). In response, Premier contends that the court should apply the plain meaning of the forum defendant rule. (ECF No. 11, at 19). Because Mr. Foxman has already waived formal service and is therefore "properly served" under the forum defendant rule, it is unnecessary for the court to consider these arguments.

to removal and that he is not a party to this case because he was not "properly served" prior to removal.

The court's conclusion that Mr. Foxman has been "properly served" for the purposes of the forum defendant rule also disposes of Premier's argument that Plaintiff has engaged in purposeful gamesmanship.  Premier contends that Plaintiff's failure to serve Mr. Foxman and file an opposition to Mr. Foxman's motion to dismiss evidences gamesmanship.  (*Id.* at 23-24).  Here, it was unnecessary for Plaintiff to serve Mr. Foxman after he had waived service by answering the Amended Complaint.  Additionally, Plaintiff has already filed an opposition to Mr. Foxman's motion to dismiss, (ECF No. 14), after being granted an extension of time to respond, (ECF No. 12).

### 2. Fraudulent Joinder

Plaintiff's fraud claim against Mr. Foxman is based on his allegation that "[o]n September 21, 2012, Ethan Foxman, acting as an agent for [Mr.] Foxman . . . [falsely] stated in an email . . . to Plaintiff that:  'No agreement has been signed by Visicaid or its affiliates with WellCare and no revenue has been collected.'"  (ECF No. 2 ¶ 17).  In support of its contention that Mr. Foxman has been fraudulently joined, Premier argues that there is no possibility Plaintiff's fraud claim against him will succeed because:  (1)  Plaintiff's  fraud  claim  lacks  sufficient particularity; (2) Plaintiff has not alleged that he relied on

9

Ethan Foxman's September 21, 2012 email and incurred subsequent damages; and (3) Plaintiff's fraud claim is barred by the statute of limitations.[3]  (ECF No. 11, at 12-18).

First, Premier contends that Plaintiff's fraud claim is insufficiently particularized because he does not allege any facts supporting an agency relationship between Mr. Foxman and Ethan Foxman.  (ECF No. 11, at 12-13).  Plaintiff argues that he has alleged the circumstances of Mr. Foxman's fraud with sufficient particularity because he has "ple[aded] the time (September 21, 2012), the means (via e-mail)[,] the content (falsely stating Visicaid has no agreement with WellCare and no revenue has been collected), . . . the identity of the sender (Ethan Foxman)[,]" and "what was gained by [Mr.] Foxman: money."  (ECF No. 15, at 6).

Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Circumstances" refers to such matters as "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what

---

[3] Premier also contends that Plaintiff's allegations of fraud are belied by the documents he references in the Amended Complaint. Premier's arguments in support of this contention will be addressed in relation to its contentions that Plaintiff has not alleged that he relied on Ethan Foxman's September 21, 2012 email and incurred subsequent damages; and Plaintiff's fraud claim is barred by the statute of limitations.

[was] obtained thereby." *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983) (citing Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1297 (1969)). A plaintiff seeking to hold a defendant vicariously liable for the fraudulent acts of its agents must plead, with particularity under Rule 9(b), the circumstances constituting fraud on the part of the purported principal-including both the facts constituting the underlying fraud and the facts establishing the agency relationship. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md. 2000) (citing *Kolbeck v. LIT America, Inc.*, 923 F.Supp. 557, 568–69 (S.D.N.Y. 1996)). "[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others . . . do not satisfy Rule 9(b)." *Haley v. Corcoran*, 659 F.Supp.2d 714, 721 (D.Md. 2009) (quoting *Kolbeck*, 923 F.Supp. at 569). Three factors are considered in determining whether an agency relationship exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Green v. H & R Block, Inc.*, 355 Md. 488, 503 (1999).

Here, Plaintiff has not alleged facts fully establishing the basis, nature, or extent of the agency relationship between Mr. Foxman and Ethan Foxman. (*See* ECF No. 2). As Premier states,

> [The Amended Complaint] provides no factual
> detail about (1) when [Mr.] Foxman would have
> instructed his son[4] to make this statement;
> (2) how [Mr.] Foxman would have instructed his
> son to make this statement . . . (3) what
> [Mr.] Foxman said to Ethan Foxman to cause him
> to act as an agent on his behalf; (4) why [Mr.]
> Foxman would have had his son make this
> statement, and (5) . . . whether [Mr.] Foxman
> had any knowledge that his son even contacted
> Plaintiff[.]

(ECF No. 11, at 13).   In addition, Ethan Foxman's September 21, 2012 email shows that he corresponded with Plaintiff via an evidently personal email account of efoxman29@gmail.com, and does not contain any information identifying Ethan Foxman as Mr. Foxman's representative in any capacity.   (*See* ECF No. 2, at 28-31).   Plaintiff merely relies on the conclusory statement that "Ethan Foxman[] act[ed] as an agent for [Mr.] Foxman[.]"   (ECF No. 2 ¶ 17).   Thus, Plaintiff has not adequately alleged fraud with particularity under Rule 9(b).

While Plaintiff may not state a claim for fraud under Rule 12(b)(6), a determination of fraudulent joinder does not necessarily follow.   Courts have deemed sparsely pleaded fraud claims lacking under Rule 9(b) nonetheless to have a "glimmer of hope" in the fraudulent joinder context because the state court,

---

[4] The parties acknowledge that Ethan Foxman is Mr. Foxman's son, although this is not alleged in the Amended Complaint.   (ECF Nos. 11, at 13; 15, at 6).   In any event, an allegation of a familial relationship still fails to show that Ethan Foxman acted not only in benefit of Mr. Foxman, but also subject to Mr. Foxman's control with the power to alter Mr. Foxman's legal relations.

once in possession of the action on remand, might grant leave to amend to cure any deficiencies rather than dismiss the alleged tort. *See, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (stating that the plaintiff's "somewhat conclusory" allegations of fraud should not be dismissed without prejudice on the basis of fraudulent joinder because the plaintiff should normally be granted leave to amend the complaint); *Jones v. Life Ins. Co. of Georgia*, 336 F.Supp.2d 631, 636 (S.D.Miss. 2004) (refusing to dismiss a defendant as fraudulently joined on the basis that the plaintiff did not allege fraud with sufficient particularity because the "[p]laintiff may simply amend her complaint to plead her [fraud] claims more specifically"); *Varona v. GEICO Gen. Ins. Co.*, No. 21-cv-20584-PCH, 2021 WL 9950762, at *3 (S.D.Fla. Apr. 27, 2021) (quoting *Leonhardt v. GEICO Cas. Ins. Co.*, No. 11-cv-1988-SDM, 2011 WL 5359840, at *2 (M.D.Fla. Oct. 28, 2011)) (declining to find fraudulent joinder where the plaintiff failed to plead his fraud claim with requisite specificity because "[f]raudulent joinder requires demonstration of an irredeemably defective claim"). A finding of fraudulent joinder results in a penalty of dismissal with prejudice to refiling, which would not be justified either in the absence of an incurable defect or for a plaintiff who has failed to plead fraud with particularity despite being given repeated opportunities to do so. *Hart*, 199 F.3d at 248 n.6.

In support of its argument that "Plaintiff's failure to make the required 'particularized showing of fraud' . . . is more than enough to justify finding that [Mr.] Foxman was fraudulently joined[,]" Premier provides a series of distinguishable cases where allegations against forum defendants failing to conform to Rule 9(b) resulted in determinations of fraudulent joinder. (ECF No. 11, at 14-15) (citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 220 F.Supp.2d 414 (E.D.Pa. 2002); *In re Rezulin Prod. Liab. Litig.*, 133 F.Supp.2d 272 (S.D.N.Y. 2001); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213, 1221 (S.D.Ala. 1998)). This is not a case where (1) the allegations contradict Plaintiff's fraud claim, *see Diet Drugs*, 220 F.Supp.2d at 424 (finding fraudulent joinder where plaintiffs alleging misrepresentation by pharmaceutical sales representatives did not provide any indication in the complaint that the plaintiffs or their doctors received any drugs at issue from those sales representatives); or (2) the court may not look beyond the pleadings to determine the propriety of joinder, *see Rezulin*, 133 F.Supp.2d at 284-85 (rejecting the plaintiffs' argument that their insufficiently particularized allegations could be cured by amendment and considering only the allegations in the complaint  to reach a determination of fraudulent joinder); or (3) Plaintiff has not alleged any misrepresentation in support of a fraud claim, *see Wakeland*, 996 F.Supp. at 1221 (emphasis in

original) (finding fraudulent joinder where a plaintiff alleging misrepresentation "[did] not specify what affirmative misrepresentation *any defendant* . . . is alleged to have made"). Here, the only defect in Plaintiff's allegations is his failure to state with particularity the agency relationship between Mr. Foxman and Ethan Foxman, which might be cured via an amended complaint. It is certainly not implausible on this record that Plaintiff can provide the necessary facts. Because Premier has not shown that Plaintiff's allegations leave "no glimmer of hope" for Plaintiff, the court will not find fraudulent joinder on this basis.

Second, Premier argues that "Plaintiff did not allege that he took any action in reliance on the purported false statement by [Ethan Foxman], or that the statement damaged him in any way apart from his claim that the severance agreement was breached." (ECF No. 11, at 16). Plaintiff contends that he has alleged that "relied on [Ethan Foxman's] statement to his detriment and suffered damages as a result." (ECF No. 15, at 6) (citing ECF No. 2 ¶ 33).

The elements of fraud in Maryland are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the

> plaintiff   suffered   compensable   injury
> resulting from the misrepresentation.

*Maryland Environmental Trust v. Gaynor*, 370 Md. 89, 97 (2002).

Here, Plaintiff has alleged both reliance and damages.  As stated

in the Amended Complaint, the action Plaintiff took in reliance on

Mr. Foxman's alleged misrepresentations-which were made through

Ethan Foxman-was accepting incomplete commission payments as if

they were full payments, and as a result, Plaintiff suffered

compensable injury in the form of unpaid commissions. (*See* ECF

No. 2 ¶ 33).

    In addition, Premier argues that "any claim of reliance by

Plaintiff is belied by the documents and the factual record"

because the only evidence Plaintiff provides in support of his

fraud claim against Mr. Foxman is the September 21, 2012 email

between Plaintiff and Ethan Foxman, and "there are no exhibits

which include any reference to . . . [Mr.] Foxman in his individual

capacity."  (ECF No. 11, at 16-17).  Plaintiff responds that as a

principal, Mr. Foxman can be liable for the acts of his agent,

Ethan Foxman.  (ECF No. 15, at 5).  "The relation of principal and

agent does not necessarily depend upon an express appointment and

acceptance thereof, but it may be implied from the words and

conduct of the parties and the circumstances."  *Green*, 355 Md. at

503 (quoting *Medical Mut. Liab. v. Mutual Fire*, 37 Md.App. 706,

712 (1977)).  Accordingly, a successful fraud claim based on agency

relationship does not require evidence expressly identifying the principal.  The fact that Plaintiff does not provide any evidence expressly referencing Mr. Foxman as Ethan Foxman's purported principal does not fatally undermine Plaintiff's allegation that he relied on the misrepresentations Mr. Foxman made through Ethan Foxman.  Premier has not shown that the evidence, however scant, eliminates any possibility that Mr. Foxman may be liable for Plaintiff's reliance on statements made by Ethan Foxman as Mr. Foxman's agent.

Third, Premier argues that Plaintiff's fraud claim against Mr. Foxman is time-barred because Plaintiff has been on notice that his commissions were calculated based only on Medicaid routine vision contracts since 2013, and again in 2017.  (ECF No. 11, at 17, 18 n.7).  In support, Premier points to exhibits attached to Premier and Ms. Taylor's motion to dismiss: Premier's quarterly commission reports beginning from 2013, which identified all payments as "Commission-WellCare Medicaid Routine Vision[,]"[5] and

---

[5]  Premier also argues that in the Amended Complaint, "Plaintiff fails to mention that he received [Premier's quarterly] commission reports and that each commission payment included a reference plainly stating that the payment was 'Commission-WellCare Routine Vision.'"  (ECF No. 11, at 17).  Plaintiff, however, indirectly refers to the quarterly commission reports in his allegation that "starting in March of the year 2013, Premier began making quarterly payments to [Plaintiff] which were represented by Lorna Taylor, individually and in her capacity as an agent of Premier, to be the amount due to [Plaintiff] under [Version 5]."  (ECF No. 2 ¶ 19).

a May 8, 2017 email from Ms. Taylor to Plaintiff affirming that Premier had been calculating Plaintiff's commissions "only for WellCare contracts *for* Medicaid Routine Vision [plans]." (ECF No. 11, at 17, 18 n.7) (emphasis in original) (citing ECF Nos. 9-3; 9-4, at 2). Plaintiff argues that the limitations period only began in November 2021 when he discovered that in 2011, Visicaid had WellCare contracts beyond those for Medicaid routine vision plans—which led him to infer that Ethan Foxman's 2012 statement about Visicaid and its affiliates' lack of WellCare contracts was false. (ECF No. 15, at 7).[6]

As explained in *Riverdale Baptist Church v. Certainteed Corp.*, 349 F.Supp.2d 943 (D.Md. 2004), "successful fraudulent joinder/statute of limitations arguments occur in cases where the issue is fairly easy to determine, either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments." *Id.* at 949. In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues unless

---

[6] Plaintiff also contends that Premier's argument that the commission reports and audit responses put Plaintiff on notice that "the only contracts Premier had with WellCare were for Medicaid routine vision plans . . . misses the point" because Plaintiff only learned in November 2021 that Premier had additional contracts with WellCare. (ECF No. 15, at 7). The notion that Plaintiff was on notice that *Premier* had additional contracts with WellCare, however, has no bearing on whether Plaintiff was on notice that *Visicaid* had contracts with WellCare at the time of Ethan Foxman's email in 2012. (ECF No. 15, at 7).

another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code. Ann., Cts. & Jud. Proc. § 5-101.   Section 5-101 analysis is subject to the "discovery rule," tolling the limitations period until "the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636 (1981).

Indeed, as Premier argues, Plaintiff does not allege in the Amended Complaint that he inferred the falsity of Ethan Foxman's statement in November 2021, (*see* ECF Nos. 2 ¶¶ 23-24; 11, at 18 n.7), but the date in which Plaintiff was on notice of Mr. Foxman's alleged fraud remains factually ambiguous.   Here, it is unclear how Premier's commission reports and Ms. Taylor's May 8, 2017 email showing that Premier is paying Plaintiff commissions only for WellCare Medicaid routine vision contracts put Plaintiff on notice about the falsity of Ethan Foxman's statement that Visicaid and its affiliates had no contracts at all with WellCare in 2012. Neither the face of the complaint or any additional evidence referenced by Premier demonstrates that Premier has satisfied its burden to show that Plaintiff's claim is plainly time-barred. Thus, the court will not find that Mr. Foxman is fraudulently joined.

## B. Request for Fees and Costs

Under 28 U.S.C. § 1447(c), a remand order may require payment of just costs and any actual expenses, including attorney fees,

incurred as a result of removal. The standard turns on reasonableness of the removal: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The court's limited authority "to award fees as a sanction for a removal taken in bad faith is widely recognized." *ITT Indus. Credit Co. v. Durango Crushers, Inc.*, 832 F.2d 307, 308 (4th Cir. 1987). Plaintiff argues that there was no reasonably objective basis for removal because Premier acknowledged that Mr. Foxman was a Maryland resident and pursuant to *Billie*, 2021 WL 3725348, removal was improper. (ECF No. 8 ¶ 11). Premier contends that it has shown a reasonably objective basis for removal because Plaintiff's joinder of Mr. Foxman was fraudulent, Plaintiff has not served Mr. Foxman in accordance with Maryland law, there is ample caselaw supporting removal, and it has not engaged in any bad faith tactics. (ECF No. 11, at 25).

"[A] plaintiff has every right to do all that is possible, within the bounds of ethical constraints, to ensure that his case remains in state court; a defendant has an equally defensible privilege to do all it can, under like constraints, to push or pull the action into federal court." *Sledz v. Flintkote Co.*, 209 F.Supp.2d 559, 564 (D.Md.2002). Although the court has concluded

that removal was improper and Mr. Foxman was not fraudulently joined, it does not find that Premier was objectively unreasonable in seeking removal because Premier has provided some authority suggesting that fraud claims against forum defendants failing to conform to Rule 9(b) support a determination of fraudulent joinder. (*See* ECF No. 11, at 14-15) (citing *Diet Drugs*, 220 F.Supp.2d 414; *Rezulin*, 133 F.Supp.2d 272; *Wakeland*, 996 F.Supp. 1213); *cf. In re Lowe*, 102 F.3d 731, 733 (4th Cir. 1996) (citations omitted) (holding that awarding attorney fees and costs was appropriate under § 1447(c) where "'a cursory examination . . . would have revealed' a lack of federal jurisdiction"). Moreover, given the lack of evidence of bad faith on the part of Premier, Plaintiff's request for fees and costs under 28 U.S.C. § 1447(c) will be denied.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's motion to remand will be granted. Defendants' motions to dismiss remain for resolution in state court. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge